ROVNER, Circuit Judge,
dissenting.
The majority order rejects Cece’s social group as being one that is defined solely by the harm its members suffer. Although it is true that “where a proposed group is defined only by the characteristic that it is persecuted, it does not qualify as a ‘social group,’ ” the Board of Immigration Appeals has never required complete independence of any relationship to the persecutor. Escobar v. Holder, 657 F.3d 537, 545 (7th Cir.2011). Just because all members of a group suffer persecution, does not mean that this characteristic is the only one that links them. Id. at 545-46. A social group “cannot be defined merely by the fact of persecution” or “solely by the shared characteristic of facing dangers in retaliation for actions they took against alleged persecutors.” Jonaitiene v. Holder, 660 F.3d 267, 271-2 (7th Cir. 2011) (emphasis added). But such a fact does not disqualify an otherwise valid social group. Escobar, 657 F.3d at 547 (instructing that we cannot tease out one component of the group’s characteristics to defeat the definition of social group.) The Board’s cases instruct that we must look to see whether the group shares “common characteristics that members of the group either cannot change, or should not be required to change because such characteristics are fundamental to their individual identities.” Id. at 545 (quoting In re Kasinga, 21 I. & N. Dec. 357, 365-66 (BIA 1996)). In this case, although it is true that these women are linked by the persecution they suffer — being targeted for prostitution — they are also united by the common and immutable characteristic of being women between the ages of sixteen and twenty-seven who meet the profile of the traffickers.
In Escobar, the social group at issue was defined as former truckers (or, more generally, those with a special skill needed by the persecutors) who resisted a powerful insurgent group and collaborated with authorities. This court deemed these characteristics unchangeable because Escobar could not alter his past actions or skills. In short, although the group may share the common experience of being targets of persecution, the members of that group may also share another trait that renders them a cognizable social group for asylum purposes. That characteristic might be membership in an extended family, sexual orientation, a former association with a controversial group, or membership in a group whose ideas or practices run counter to the cultural or social convention of the country. In this latter group we find women who are opposed to and fear female genital mutilation, Agbor v. Gonzales, 487 F.3d 499, 502 (7th Cir.2007); women who “in accordance with social and religious norms in Jordan, are accused of being immoral criminals and, as a consequence, face the prospect of being killed without any protection from the Jordanian government,” Sarhan v. Holder, 658 F.3d 649, 654 (7th Cir.2011); or Christian women in Iran who do not wish to adhere to the Islamic female dress code, Yadegar-Sargis v. INS, 297 F.3d 596, 603 (7th Cir.2002). This court’s recent opinion in Sarhan lists many other examples of social groups, included among them children who *515 escaped after being enslaved by Ugandan guerillas, women who are sold or forced into marriage and involuntary servitude, and landowning cattle farmers targeted by Columbian rebels. Sarhan, 658 F.3d at 655.
Human trafficking in general and forced prostitution specifically are serious, devastating, and widespread problems. This, however, does not mean that every young person or woman in the world who has a generalized fear of human trafficking has a viable claim for asylum in this country. Ceee’s claims were very specific. Because of her family circumstances, she was left to live alone in a country where it is uncommon for women to do so. She was, at that time, within the age range of young women who are seen as good candidates for forced prostitution. She was targeted by the leader of a gang known for harassing, threatening, and trafficking women. That leader stalked and harassed her, at one point pinning her against a wall and threatening that he would not be stopped. Cece went to the police, but they refused to help. Cece’s expert testified that forced prostitution is pervasive in Albania because of political instability, because the police turn a blind eye, and perhaps most importantly, because the police and government themselves are frequently the ones involved in trafficking. (See, e.g., R. 224-28). According to the expert, Albania is also unique among the other Balkan states and Europe because in many ways it still has not completed its transition from a closed Communist society to an open market economy, because the rule of law has not yet been established, and because of pervasive political and economic instability. (R. 232). Furthermore, according to Cece’s own expert, women age out of the targeted category at a still rather young and predictable age — twenty-six or twenty-seven — another factor unique in asylum claims.
Cece maintains that she faces a present danger of persecution, but the testimony of Cece’s own expert is that the group of threatened women in Albania is composed of women who are between the ages of sixteen and twenty-six (perhaps twenty-seven) who live alone. Cece is now in her early thirties and clearly no longer a member of the group defined by her own expert. Although her expert testified that there are people outside this age range who are being kidnapped and trafficked, he did not explore in any detail the factors that might make someone outside of this group a target. (R. 255). Cece’s circumstances have changed in such a way that we must now evaluate whether her life or freedom would still be threatened in Albania. See 8 C.F.R. § 1208.16(b)(i)(A).
The majority also claims that the record provides sufficient evidence for the Board’s determination that Cece can relocate safely within Albania. The Board, however, failed to take account of the fact that Cece relocated to Tirana without incident, but only when she lived with her sister there— a sister who now lives in the United States. (R. 9, 330). See also (R. 145,170-71, 173). Cece’s claim is that women who live alone, without the protection of family, are subject to human trafficking. On remand, the immigration judge noted that the Board’s conclusion that Cece could relocate within Albania was inconsistent and not supported by the only evidence on the matter, but that he was forced to follow the Board’s conclusion nevertheless. (R. 118-20).
I would remand to the immigration judge to determine whether Cece has a viable claim that she will remain a target of forced prostitution if she returns to Albania. Therefore, I respectfully dissent.